UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | **Hon. Dennis M. Cavanaugh** |
| STRATEGIC TECHNOLOGIES, INC. | : | **OPINION** |
| Debtor. | : | Bankruptcy Case No. 02-37935 (NLW) |
| ANTHONY R. CALASCIBETTA, Chapter 7 Trustee for Strategic Technologies, Inc., | : | Civil Action No. 04-CV-2656 (DMC) |
| Plaintiff-Appellee, | : | |
| v. | : | |
| MARC G. COOPER and ELYCE COOPER, | : | |
| Defendants-Appellants. | : | |

**DENNIS M. CAVANAUGH, U.S.D.J.:**

This matter having come before the Court on appeal of Chapter 7 debtors Marc G. Cooper and Elyce Cooper ("Appellants") from an Order entered by the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") on December 22, 2003, denying Appellant's motion for an order clarifying the terms of the settlement agreement between Appellants and the Trustee of Strategic Technologies, Incorporated, Anthony R. Calascibetta ("Appellee") and granting Appellee's cross-motion for an order enforcing the settlement agreement previously entered into by the parties. No oral argument was heard on this matter pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated below, this Court affirms the decisions of the Bankruptcy Court.

1

## I. Procedural History

Strategic Technologies, Inc. ("STI"") was a company that provided services related to shipping, including auditing freight bills and collecting and transmitting funds to pay freight bills. (Appellee's Brief in Opposition to Appellants' Bankruptcy Appeal ("Appellee's Br.") at 3). On July 18, 2002, STI filed a Chapter 11 petition with the Bankruptcy Court, who appointed Appellee as Trustee for STI. (Appellants' Brief in Support of Bankruptcy Appeal ("Appellants' Br.") at 2). Appellee recommended STI be liquidated pursuant to Chapter 7 of the Bankruptcy Code. (Id.) With this recommendation in mind, Judge Novalyn L. Winfield, United States Bankruptcy Judge ("Judge Winfield"), entered an order on July 31, 2002, converting the Chapter 11 case to a Chapter 7 case. (Id.)

During the winter of 2002 and into the spring of 2003, Appellee and Appellants began discussions regarding possible resolution of the estate's claims against the Appellants. (Appellee's Br. at 4). Shortly after these discussions began, Ms. Cooper retained her own counsel, who was then included in these discussions. (Id.) In October 2002, the parties agreed to a Stipulated Order that was entered by Judge Winfield in November 2002, which limited Appellants monthly personal and legal expenditures. (Appellants' Br. at 2). Settlement discussions proved unsuccessful and in March 2003, Appellee filed an adversary proceeding against Appellants to recover funds diverted from STI to Appellants. (Appellee's Br. at 4). Appellee's complaint sought recovery of the losses suffered by STI's customers as a result of Mr. Cooper's wrongful diversion of funds and the recovery of funds fraudulently transferred to Mrs. Cooper. (Id.) At around the same time Appellee filed his complaint, Ms. Cooper commenced a matrimonial dissolution action in Superior Court of New Jersey, Chancery Division, Family Part,

Monmouth Vicinage.  (Appellants' Br. at 2).  After Appellee filed a complaint, parties again commenced settlement discussions.  (Appellee's Br. at 4).

On May 2, 2003, the parties agreed to a term sheet listing material terms that would be included in a settlement agreement.  (Id.)  In the term sheet it stated Appellants would pay Appellee $515,000.00 in six (6) installments over a period of a little more than one year for full settlement of the Appellee's claims against them.  (Id.)  Appellants also gave Appellee the deed in lieu of foreclosure to their home in Colts Neck, New Jersey ("Colts Neck Property") for security.  (Id.)  The term sheet also discussed two matters outside the Bankruptcy proceedings: (1) a proposed property settlement between Mr. and Ms. Cooper related to the divorce they were allegedly contemplating; and (2) a pending state court action against Mr. Cooper commenced by Atofina Petrochemicals, Inc. ("Antofina"), who was a former STI customer.  (Id. at 5).  In regard to the marital property, Appellants informed Appellee of their desire to transfer all of Mr. Cooper's assets to Ms. Cooper, including the Colts Neck Property.  (Id.)  Appellants and Appellee came to the agreement that Appellants would be jointly and severally liable to the Appellee for the full Settlement Amount.  (Id.)  This assured that any division of the Cooper's marital property would not impact the terms of the settlement agreement between the parties.  (Id.)  As a result, Appellee would not have any reason to object to any Matrimonial Property Settlement ("MPS") due to the fact that he could look to either Appellant for payment of the full settlement amount.  (Id.)  Appellants informed Appellee of their intention to transfer the Colts Neck Property to Ms. Cooper.  (Appellants' Br. at 3).  Appellants claim it was their understanding that the Colts Neck Property would be incorporated into the settlement agreement in the bankruptcy case.  (Id.)

3

Regarding the action with Atofina, Atofina obtained a restraining order to recover amounts it paid to STI that were misappropriated by Mr. Cooper. (Appellee's Br. at 5) The restraining order prevented Mr. Cooper from transferring or disposing of his personal assets. (Id. at 5-6). The restraining order did not apply to Mrs. Cooper. (Id. at 6). Due to the fact that Mr. Cooper's agreement to pay the settlement amount and convey the deed in lieu of foreclosure to Appellee could be considered as a violation of the restraining order, the term sheet addressed this issue and required Mr. Cooper to pursue this matter in state court. (Id.) Appellants claim that they understood that the terms of the settlement required the restraints connected to the Monmouth County litigation with Atofina to be lifted. (Id.)

On or about May 13, 2003, Appellee moved for authority from the Bankruptcy Court to enter into a settlement agreement with Appellants in accordance with the term sheet. (Appellee's Br. at 6). This motion was heard on July 1, 2003, and the parties met in a conference room to discuss objections by various creditors, including Antofina. (Appellants' Br. at 4). Antofina's objections revolved around its concern that the proposed settlement terms could impact its claims against Mr. Cooper. (Appellee's Br. at 7). Antofina argued that nothing should be included in the agreement that would prevent it from objecting to the transfer of Mr. Cooper's assets to his wife pursuant to the MPS. (Id.)

Eventually the parties formed a preliminary settlement agreement ("PSA"), which differed from the term sheet in a few ways. (Id. at 8). First, language about the "incorporation" of the MPS was discarded. (Id.) Instead, the PSA stated the Trustee would "take no position" with respect to the MPS so long as it did not negatively affect his settlement agreement with Appellants. The PSA also specifically stated that Appellants would be jointly and severally

4

liable to Appellee for their obligations under the settlement agreement with Appellee, regardless of whether Appellants entered into a MPS and regardless of the MPS's terms. (Id.) Appellants also agreed to give Appellee the mortgage to the Colts Neck property instead of the deed in lieu of foreclosure, which the term sheet had originally provided. (Id.) The PSA became the Final Settlement Agreement in July 2003, when Appellants and Appellee signed the document. (Id. at 9). Judge Winfield entered the Approval Order on July 11, 2003. (Id.)

Shortly after this order was entered, Mr. Cooper moved before the Super Court of New Jersey, Law Division, Monmouth Vicinage, for an order modifying the restraints entered against him in the Antofina action. (Id. at 5). Mr. Cooper requested the Court to modify the restraining order to allow him to transfer his interest in the Colts Neck Property and all of his other assets to Mrs. Cooper pursuant to the MPS. (Appellee's Br. at 10). Atofina filed a "partial objection" to the relief requested as going beyond that which was required for him to complete his performance under his settlement agreement with Appellee. (Id.) After argument was heard, the Court denied Mr. Cooper's motion. (Id. at 11). In response, Appellants filed a motion before the Bankruptcy Court requesting clarification of the final settlement agreement, or in the alternative, a declaration that the Approval Order is null and void. (Appellants' Br. at 7).

Mr. Cooper made two arguments to the Bankruptcy Court: (1) the final settlement agreement was contingent on the restraining order with Antofina being modified; and (2) that Appellants believed that Antofina consented to the MPS's terms and that if they had known this was not the case, they would not have entered into the final settlement agreement with Appellee. (Id. at 8-9). Appellee and Antofina opposed Appellants' motion for clarification, arguing that the final settlement agreement contradicted Mr. Cooper's position and requested the Bankruptcy

Court to enforce the final settlement agreement. (Appellee's Br. at 12). Mr. Cooper filed a cross-motion to the motion to enforce on September 5, 2003. (Id. at 13). On September 8, 2003, the Bankruptcy Court heard oral argument on the motion and on December 22, 2005, Judge Winfield entered an order denying Mr. Cooper's motion for clarification and granting Appellee's cross motion for enforcement. (Id. at 13-14). The Bankruptcy Court entered an order on December 22, 2005, and on December 31, 2003, Appellants appealed the decision before this Court. This Court now affirms the order of the Bankruptcy Court.

## II. Discussion

### A. Jurisdiction and Standard of Review

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a), which provides for appellate jurisdiction in the district courts from "final judgments, orders, and decrees ... of bankruptcy judges." In reviewing an order of the Bankruptcy Court, a District Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a de novo standard to the Bankruptcy Court's legal conclusions. See In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989); In re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983); Fed R. Bankr. P. 8013.

### B. The Final Settlement Agreement is not Ambiguous

A provision or clause of an agreement is ambiguous if it is reasonably susceptible to more than one meaning or interpretation. Sumitomo v. Machinery Corp. v. Alliedsignal, Inc., 81 F.3d 328, 322 (3d Cir. 1993). In deciding when a contract is ambiguous, a court should not limit its analysis to the "four corners of the document." In re New Valley Corp., 89 F.3d 143, 150 (3d Cir. 1996). Instead, a court should hear "the proffer of the parties and determine if there are

6

objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings."  Id.; citing, Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132,135 (3d Cir. 1993).  A court should consider contract language, the meanings suggested by the parties' attorneys, and the extrinsic evidence offered in support of each interpretation to determine whether ambiguity exists.  Int'l Union v. Mack Trucks, 917 F.2d 107, 111 (3d Cir. 1990).  If a court finds that an agreement is ambiguous, the court must consider extrinsic evidence in order to clarify the meaning of the ambiguous terms.  In re New Valley Corp., 89 F.3d at 150.  Extrinsic evidence includes the structure of the agreement, the bargaining history, and any of the parties' conduct that reflects their understanding of the contract.  Teamsters Indus. Employees Welfare Fund, 989 F.2d at 135.

Appellants argue the Bankruptcy Court applied an incorrect legal standard when analyzing the issue of ambiguity in regard to the Final Settlement Agreement.  Appellants argue that Judge Winfield's use of Linder v. Inhalation Therapy Serv., Inc., 834 F.2d 306 (3d Cir. 1987), which is no longer good law, warrants reversal of her decision.  In her bench decision Judge Winfield stated that Linder stood for "the proposition that a contract must be interpreted in accordance with the meaning ascribed to it by the parties, and that intention or meaning is determined from the entire agreement, and extrinsic evidence can be considered only if the language is ambiguous."  Appellants however ignore the remainder of Judge Winfields decision which contains a thorough discussion of applicable law to support her conclusion.

Judge Winfield discussed the Third Circuit's definition of ambiguity set forth in its Teamsters decision, which is good law, noting that ambiguity exists when "the terms of the contract are susceptible of different meanings."  Judge Winfield also addressed the factors listed

7

by the Third Circuit in <u>Teamsters</u> for courts to consider when determining whether contract terms are ambiguous. These factors include "contract language, meanings suggested by counsel, and the extrinsic evidence." Applying the analysis used by the Third Circuit in <u>Teamsters</u>, Judge Winfield stated, that in order to make a determination about the alleged ambiguity of the Final Settlement Agreement, "not only does the Court have to examine this particular settlement agreement, but I have to consider the different interpretations offered here and, to that extent I think I have to consider extrinsic evidence, the certification supplied by the Coopers in understanding whether there was any ambiguity." After thoroughly considering each of those factors, Judge Winfield concluded "there is no ambiguity in the document, and that the motion by Mark Cooper should be denied in its entirety."

     Judge Winfield did not limit her analysis to the <u>Linder</u> decision. She applied the analysis set forth by the Third Circuit in the <u>Teamsters</u> decision and considered all of the relevant factors required. No authority exists to support the position that a contract is ambiguous merely because parties disagree over its interpretation. Contract terms may only be considered ambiguous if, after examining all of the factors listed above, a court finds the term is reasonably susceptible to more than one meaning. <u>Sumitomo v. Machinery Corp.</u>, 81 F.3d at 322. Appellants have failed to identify any terms or sections of the Final Settlement Agreement that could be ambiguous. Here Judge Winfield performed the proper analysis and found ambiguity did not exist. Therefore this Court affirms her decision.

**C. The Doctrine of <u>Contra Preferentum</u>**

     Finally, the doctrine of <u>contra preferentum</u> does not apply in this case. <u>Contra Preferentum</u> requires that the provision in question be construed less favorably to the party that

8

selected or drafted the contract language when there are two practical interpretations of an ambiguous provision.  Newport Assoc. Dev. Co. V. The Travelers Indem. Co. of Ill., 162 F.3d 789, 794 (3d Cir. 1998).  Here, this doctrine does not apply because there were no ambiguous provisions in the Final Settlement Agreement.  Also, the language used in the Final Settlement Agreement was the result of extensive multi-party negotiations.  When that is the case, this doctrine does not apply.  Id. at 794.

### III. CONCLUSION

For the reasons stated, the rulings of the Bankruptcy Court in the December 22, 2003, order are **affirmed.**

            S/ Dennis M. Cavanaugh
            Dennis M. Cavanaugh, U.S.D.J.

Date:      March 22, 2006
Original:  Clerk's Office
Cc:        All Counsel of Record
           File